

## BYRON FINANCIAL L.L.C.

September 24, 2013

Christopher Wright
190 Carondelet Plaza
Suite 1450
St. Louis, MO 63105

Dear Chris:

As a follow up to our meeting on Tuesday, September 17, 2013, please find the following enclosed documents.

Exhibit A – Our Agreement
Exhbit B – Pending Cases as of 9/18/13
Exhibit C – Closed Cases as of 9/20/13

Per our conversation, my understanding is that we are terminating our agreement as of our meeting September 17, 2013. The enclosed list of pending cases and closed cases would encompass the cases/clients covered by our agreement. We are committed to seeing all of the pending cases through to completion. Any future cases you would like us to work on would need to be agreed upon separately.

We look forward to working with you to complete all of the pending cases in the coming months.

Sincerely,

William M. Byron

William M. Byron

Enclosures (3)

cc: Josh Mayor
    Danielle Butigieg
    Brenda Cavanaugh
    William Bray



## EMPLOYMENT AGREEMENT

THIS AGREEMENT made and entered into this 1st day of February, 2013, by and between **BYRON FINANCIAL, LLC,** a North Carolina limited liability company (the "Company"), and **CHRISTOPHER DUDLEY WRIGHT** ("WRIGHT").

### WITNESSETH:

WHEREAS, the Company is engaged in the active practice of rendering financial planning, investment, insurance, and retirement consulting services to individuals and other entities (the "Business");

WHEREAS, Company wishes to employ WRIGHT as either a statutory employee or engage him as independent contractor (with his final statutory employment/independent contractor status status to be determined as soon as possible) with the intent that he contribute to the long-term financial well-being of the Company and with the intent that WRIGHT will eventually become a part owner of Company's St. Louis business operation, assuming his performance is satisfactory;

WHEREAS, Company has applied for firm membership in the M Financial Group, has every indication an offer of membership will be extended and is awaiting formal approval;

NOW, THEREFORE, in consideration of the mutual covenants contained herein and intending to be legally bound hereby, the parties hereto agree as follows:

1.     <u>Ownership.</u> Subject to the satisfactory performance of his duties hereunder and mutual agreement on the terms of ownership, it is the intention and hope of the parties that WRIGHT will become a part owner of the St. Louis operations of the Company at the end of three (3) years employment hereunder (the terms "employment" or "employee" or the like as used hereunder are subject to the parties final determination of Wright's status as a statutory employee or independent

contractor). The terms and extent of future ownership will be mutually determined by the parties at the end of such three year term.

2. **Duties and Obligations of Wright**. WRIGHT's employment shall commence on February 1, 2013 (the "Commencement Date"). WRIGHT shall devote his full-time and best efforts to the performance of the duties, responsibilities and functions of a producer in the Company (sales of products and services offered by the Company) and substantially all of WRIGHT'S services are to be performed personally by WRIGHT. WRIGHT shall be based in his office in St. Louis, Missouri. WRIGHT shall have the title of Midwest Region Managing Director. During the period of WRIGHT's employment hereunder, he shall not take any action or perform any services for or on behalf of any person or entity for remuneration which are similar to the actions taken or services performed by WRIGHT for the Company without the express written approval of the Company, which approval may be withheld in the Company's sole discretion. WRIGHT agrees that he will market his services and the services of the Company exclusively under the Company's name or such other names as directed by the Company. Notwithstanding the above, WRIGHT is permitted to sell or broker financial planning, investment, and insurance products of companies other than the Company's (or M Financial Group products) with the commissions from such sales accruing to the Company and being allocated between WRIGHT and the Company pursuant to the terms of this Agreement below, and in no way shall said actions by WRIGHT be considered a breach of this agreement. If the sale of said products results in a commission being paid to WRIGHT directly, WRIGHT shall tender said commission to the Company for allocation under Section 3 of this Agreement.

3. **Compensation**

(a)     While WRIGHT is employed by the Company, with respect to all commissions paid to the Company (or its subsidiaries and affiliates) from clients referred from, originated by or generated by WRIGHT from life insurance product sales, including first year and override commissions but excluding renewal commissions which shall mean any commissions attributable to the second year or any later year for any insurance or financial product, regardless of whether the particular product was technically renewed by the purchaser, registered investment fees, 401(k) fees (asset-based) and brokerage commissions, regardless of whether fees are generated from the sale of M Financial Group products, shall be shared as follows on a yearly basis :

| | Split | |
| Commissions | Wright | Company |
| --- | --- | --- |
| $0 - $3,333,334 | 85% | 15% |
| $3,333,335 - $5,833,334 | 90% | 10% |
| > $5,833,334 | 95% | 5% |

Except as provided below provided below, all renewal commissions shall be split eighty-five percent (85%) to WRIGHT and fifteen percent (15%) to Company. For the purposes of this provision and the provisions below "a year" shall be deemed to begin on January 1st and end on December 31st. Net Revenue generated from sales of retirement plans or investments (RIA) from clients referred from, originated by, or generated by WRIGHT, shall be treated as commissions under this Agreement (i.e. subject to the allocation described above in this paragraph), except that net revenues from the sales of said retirement plans or investments (RIA's) for which WRIGHT had been the broker prior to the Commencement Date, shall be paid eight-five percent (85%) to WRIGHT and fifteen percent (15%) to the Company. Net Revenue shall mean and refer to gross revenues less the direct and indirect expenses related to administering, managing and servicing such retirement plans and investments. Any renewal commissions for all insurance products payable to WRIGHT with respect to sales made

by WRIGHT prior to the Commencement Date shall belong solely to WRIGHT. Any change in the allocations as described in this paragraph or the below paragraphs must be mutually agreed to in writing by WRIGHT and the Company. WRIGHT acknowledges and agrees all services (including but not limited to case design and support) shall be provided through the Company and approved by the Company. All such services to be performed by Company and WRIGHT are described on **Exhibit A** attached hereto and hereby made a part hereof. Any additional services WRIGHT requests the Company to perform shall be handled on a case by case basis with regard to the commission split by mutual agreement of the parties.

(b)     If WRIGHT's employment is terminated or he terminates his employment for any reason, the commission split allocations in paragraph (a) above (other than for renewal commissions as described above) shall remain in effect for two (2) years following termination of employment for Cases that are Pending on the date of termination. Cases that are Pending shall mean and refer to all cases where the Company has performed any of the services described on **Exhibit A** prior to termination of employment. Provided, however, WRIGHT shall be entitled to all (i.e. 100%) of his renewal commissions after termination if and only if he assumes responsibility for servicing the contracts. If Company is asked or required to service the contracts, Company shall be entitled to all renewal commissions for as long as it services the contracts.

(c)     Commissions due WRIGHT under this Agreement shall be paid to him twice a month in accordance with the Company's standard payroll/commission payment policy.

(d)     If the Company is eligible to participate, Wright shall also be eligible to participate in the Company ICP Plan in the form attached as **Exhibit B**, as the same may be amended on the same basis on which the Company participates.

4.  Benefits. WRIGHT will directly provide his own office space in St. Louis, Missouri, furniture, equipment, office supplies, etc., reasonably necessary to perform the services contemplated hereunder at the volume of production by WRIGHT. Company will pay and WRIGHT will reimburse Company for WRIGHT's insurance, brokerage, and other financial or financial planning licenses which are customarily obtained for the sale of Company's products. Company will also pay and WRIGHT will reimburse Company for WRIGHT'S errors and omissions insurance at the customary rates and coverage amounts for similarly situated producers of the Company. It is the intention of the parties that WRIGHT shall bear all costs of the operation of the St. Louis office and if the Company pays an expense related to the operation of such office WRIGHT shall reimburse the Company. The parties will mutually determine whether to treat WRIGHT's staff as employees of the Company or employees of WRIGHT. If the parties agree that that WRIGHT'S staff shall be employees of the Company, then WRIGHT shall reimburse the Company for the expenses, including the salary and benefits, of said employees.

(a)  Company will allow WRIGHT to participate in its health insurance plan to the extent he and his family are eligible. WRIGHT shall reimburse Company for such cost.

(b)  WRIGHT will be responsible for paying for his car and travel expenses, meals, entertainment, continuing education, seminars, conventions, marketing meetings, and phone. WRIGHT may turn in vouchers for such expenditures and be reimbursed by Company, with Company then deducting such reimbursements from WRIGHT's compensation.

5.  Compensatory Payments.

(a)  WRIGHT expressly understands and agrees, without coercion, duress or undue influence on the part of the Company, or any other party, that all clients for whom he performs work or services, or all entities with whom the Company has contractual relationships, are clients of the

Company (hereinafter "Client" or "Clients") and not his individually, subject to the provisions in this Agreement governing "Permitted Clients" as stated below.

WRIGHT further acknowledges that during his employment with the Company, he will have had the benefit of opportunities and training provided by the Company and the Company's confidential information and in consideration of that WRIGHT has agreed to the post-employment compensatory payments (the "Compensatory Payments") provided herein.

(b)     Subject to the provisions of Section 3(b) above, in the event WRIGHT's employment with the Company is terminated at any time for any reason, WRIGHT may contact and take with him any clients of the Company which were originally generated or brought to the Company by WRIGHT or which are generated after the Commencement Date substantially by WRIGHT's efforts (the "Permitted Clients"). In the event of the termination of WRIGHT's employment the parties will mutually prepare a list of the Permitted Clients. WRIGHT agrees that for a period of three (3) years following termination of his employment (the "Restriction Period"), he will not contact, solicit or discuss financial services/insurance business with (i) any Clients of the Company, other than the Permitted Clients or (ii) any person or business to whom the Company has made a proposal within the twelve (12) months prior to the date of WRIGHT's termination of employment (a "Prospective Client"), other than the Permitted Clients. WRIGHT agrees to promptly pay to the Company for a period of three (3) years following the termination of his employment, fifteen percent (15%) of the paid commissions he generates during the Restriction Period from any Client or Prospective Client of the Company, except for the Permitted Clients. In addition, the Company shall be entitled to a commission on any post-termination sale by WRIGHT to a Permitted Client, if the Company has performed any of the services described on **Exhibit A** as of the date of WRIGHT's termination of employment. Said commissions will be allocated pursuant to Section 3 of this

Agreement. During the Restriction Period, Company shall not contact any of the Permitted Clients without the written consent of WRIGHT.

(c)    If, following termination of WRIGHT's employment hereunder, WRIGHT forms or joins any firm, association or business entity, then, for purposes of this Agreement, any services performed for a Client or a Prospective Client other than a Permitted Client of the Company, which are similar to the services described in this Agreement and payments received as a result of such services, by such firm, association or business entity, shall be deemed to be services performed, and payments received by, by WRIGHT for purposes of determining whether, and to what extent, Compensatory Payments owed by WRIGHT under Section 5(b).

(d)    Compensatory Payments shall be due on the fifteenth of each month following the month in which the collections were received and shall be accompanied by a report in reasonable detail setting forth the name of the Client and the monies received.

(e)    The Company shall have the right to inspect the books and records of WRIGHT, or any firm, association or business entity that WRIGHT has formed or joined, to determine whether WRIGHT has paid the Company what is properly owed under this Agreement. WRIGHT shall have the right to inspect the books and records of the Company or any of its successors, to determine whether the Company has paid WRIGHT what is properly owed under this Agreement.

(f)    Any payments not made when due under this Agreement (including payments to WRIGHT) shall bear interest at an annual rate of one and one-half percentage points in excess of the national commercial rate of interest published in the "Money Rates" column of the Wall Street Journal on the date such payment was due (but not in excess of the maximum rate allowable under applicable usury laws).

(g)     The parties hereto understand and agree that by reason of loss of a Client, the Company will have sustained damages through loss of income, Client confidence and impairment of professional reputation, which damages will be substantial and incapable of accurate calculation, and, therefore, the Compensatory Payments provided for in this Section 5 are the only amounts that can be recovered and will constitute the total and complete recovery.

(h)     WRIGHT agrees that during the Restriction Period, he will not solicit for employment any employee of the Company (other than employees of the Company based in St. Louis and who are part of Wright's staff who he may solicit) or solicit for services any advisors or subcontractors of the Company (except for employees, advisors or subcontractors that WRIGHT had employed or contracted with prior to the Commencement Date of this Agreement) and agrees not to contact or solicit any referral sources of the Company except for referral sources generated or developed substantially by WRIGHT or that WRIGHT used as a referral source prior to the Commencement Date of this Agreement.

6.     Confidential Information.

(a)    "Confidential Information" means any information not generally known by third parties, including the Company's competitors or the general public, whether or not expressly identified as confidential. Confidential Information includes any and all information about the Company's trade secrets, finances, compensation, strategic plans, marketing information, sales information and training materials, as well as all Company records, documents and manuals. It also includes information about Clients and prospective clients of the Company, including their identities and their business practices. Confidential Information does not include information about Permitted Clients. Confidential Information also does not include (i) information lawfully known by WRIGHT prior to disclosure thereof by Company; (ii) generally available to the public or the

Company's industry other than as a result of a breach or violation of any obligation of confidentiality, or (iii) specifically approved for release by the prior written authorization of the Company. Confidential Information also does not include information about M Financial Group products (including, but not limited to, the marketing information, sales information, and training materials regarding M Financial Group products), and it shall not be a breach of this Agreement (or the basis of any liability on the part of WRIGHT) for WRIGHT to sell or provide advice about M products for another authorized dealer of said products or to otherwise compete with the Company through the sale of financial or insurance products, after any termination of this Agreement, subject to the Compensatory Payment provisions above.

(b)     All Confidential Information shall be and at all times remain the property of the Company, and the WRIGHT is hereby expressly prohibited from disclosing any Confidential Information during the term of employment, or from using or disclosing any Confidential Information after the term of employment, except upon the written consent of the Company, which may be withheld for any or no reason.

(c)     WRIGHT acknowledges and agrees that any violation of this Section 6 would constitute irreparable injury to the Company and that in the event of such a violation, the Company may seek injunctive relief and/or any and all other remedies allowed by law.

7.     Indemnification. WRIGHT agrees to indemnify, defend and hold harmless Company from any and all claims, demands, suits, actions, costs, investigations, the basis of which arose or occurred prior to the Effective Date, including but not limited to any claims made against WRIGHT, the Company or by former employers of WRIGHT.

8.     Termination. Company may terminate this Agreement at any time and for any reason upon thirty (30) days' advance written notice to WRIGHT. WRIGHT shall be entitled to the

Company's pro-rata providing of benefits and expenses as provided in paragraph 4 and any Commissions as provided in paragraph 3. Company may, at its option, cause the termination of WRIGHT to be effective immediately; provided, however, that WRIGHT shall be entitled to the same remunerations he would have received with thirty (30) days' notice. WRIGHT may terminate this Agreement upon thirty (30) days' written notice and in such case WRIGHT shall be entitled to the Company's pro-rata providing of benefits and expenses as provided in paragraph 4 and any Commissions as provided in paragraph 3.

WRIGHT's employment shall/may also be terminated as follows:

(a) WRIGHT's employment shall terminate upon his death.

(b) Either party may terminate this Agreement upon WRIGHT's Disability. For purposes of this Agreement, "**Disability**" means disability under any group disability policy of the Company then in effect in which WRIGHT participates, and in the absence of any such policy means the inability of WRIGHT to perform his principal duties hereunder for a period of ninety (90) days as determined in the sole discretion of the Company.

(c) Company may terminate this Agreement immediately upon notice to WRIGHT if: (i) WRIGHT commits an act of material dishonesty in connection with his employment; (ii) WRIGHT is convicted of a crime involving moral turpitude; (iii) WRIGHT willfully fails to perform or neglects his duties to the Company as an WRIGHT; or (iv) WRIGHT breaches Sections 6 or 7 hereof, or otherwise materially breaches this Agreement.

(d) In the event either party materially breaches this Agreement, the non-breaching party may terminate this Agreement upon notice to the breaching party.

(e)     If WRIGHT is terminated under subsections (a)-(d) above, he shall be entitled to the Company's pro-rata providing of benefits and expenses as provided in paragraph 4 and any Commissions as described in paragraph 3.

Termination of WRIGHT's employment under this Agreement shall not relieve either party from any liability it may have for breach of this Agreement. The provisions of Sections 6 and 7 hereof shall survive any termination of WRIGHT's employment under this Agreement.

9.     Statutory Employee or Independent Contractor. The parties shall determine as soon as possible if WRIGHT is eligible to be treated as a "statutory employee" under the applicable provisions of the Internal Revenue Code. If WRIGHT is eligible, the Company shall treat WRIGHT as a statutory employee and if not, as an independent contractor. If WRIGHT is treated as a statutory employee, WRIGHT shall bear all associated costs. However, WRIGHT'S ultimate classification under the Internal Revenue Code, whether it be statutory employee, independent contractor, or something else, shall not affect the substantive obligations of the parties to each other under this Agreement.

10.    M Financial Group. The Company has applied for firm membership in the M Financial Group, has every indication a membership offer will be extended and is awaiting formal approval. Once Company has received formal approval, WRIGHT shall apply for approval as an M Financial Group producer for the Company. If the Company and/or WRIGHT does not receive formal approval, either the Company or WRIGHT may terminate this Agreement by written notice to the other party.

11.    Governing Law: Authorship.

(a)     This Agreement shall be governed by, and construed in accordance with, the laws of the State of North Carolina, without regard to principles of conflicts of law.

(b)     No provision of this Agreement shall be construed based on its authorship.

12. Amendments. No amendment, alteration, or modification of this Agreement shall be binding upon the parties hereto unless said amendment, alteration, or modification is in writing and signed by all parties hereto.

13. Waiver. The waiver of any term, condition, clause, or provision of this Agreement shall in no way be deemed or considered a waiver of any other term, condition, clause, or provision of this Agreement.

14. Severability. In the event that any part of this Agreement is declared by any court or other judicial or administrative body to be null, void or unenforceable, said provision shall survive to the extent it is not so declared, and all of the other provisions of this Agreement shall remain in full force and effect. In particular, in the event that the agreements in Sections 5 and 6 shall be determined by any court of competent jurisdiction to be unenforceable by reason of its extending for too great a period of time or over too great a geographical area or by reason of its being too extensive in any other respect, it shall be interpreted to extend only over the maximum period of time for which it may be enforceable and/or over the maximum geographical area as to which it may be enforceable and/or to the maximum extent in all other respects as to which it may be enforceable, all as determined by such court in such action

15. Successors and Assigns. The rights and obligations under this Agreement shall inure to the benefit of, and shall be binding upon the parties hereto, and upon their successors and assigns, including WRIGHT's estate and spouse in the event of his death.

16. Headings. The article, section and paragraph headings in this Agreement are for reference purposes only and shall not affect the meaning or interpretation of this Agreement.

17. Counterparts. This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which shall constitute the same instrument.

18      <u>Words in Singular and Plural Form; Gender</u>. Words used in the singular form in this Agreement shall be deemed to impart the plural, and vice versa, as the sense may require and words importing one gender shall include the other.

19      <u>Review of Agreement</u>. The parties hereby certify that they have read the terms of this Agreement, that they have had an opportunity to consult the independent counsel of their choosing, and      that      they      understand      the      Agreement's      terms.

IN WITNESS WHEREOF, the parties hereto have set their Hands and Seals this 1st day of February, 2013.

WITNESS:                                          BYRON FINANCIAL, LLC

_Niele Brusden_

                                                  By: _W. M. Byrn_ ,
                                                  Name: _William Byron_
                                                  Title: _Managing Partner_

_____                           _Christopher Wright_____(SEAL)
                                                  CHRISTOPHER DUDLEY WRIGHT

## Shared Commission Prototype
## Prepared for Byron Financial LLC

In concert with one of my producer clients who wanted to bring additional producers into his firm—adding to revenue potential and offering access to advanced planning resources—IdeaTransfer helped develop the following prototype for producer commission splits. The system deconstructs the consultative sales process into ten components, including all the interface with client and product sources and recognizing the value of infrastructure investment.

All of the ten components are assigned 10% of the total commission revenue available on the application. Each component can be split as 10/0%, 5/5%, or 0/10%. The totals of these ten components represents the split designated on the application.

One advantage of this approach is flexibility. Producers can agree to respective compensation at the outset of a case and revise compensation based on actual experience at the close of the case. Another advantage of deconstructing the client development process to this level of detail is to make the assignment of responsibilities and accountability more visible and authentic.

Terry White    IdeaTransfer    68 Esplanade, Irvine, CA 92612    714.614.6838
twhite@ideatransfergrid.com    www.ideatransfergrid.com

## Records Shown: 89

| Policy # | Contact Name | Group Name | Benefit | Premium | Target Amount | Address | Status | All Open Requirements | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Wright, Melissa | | 3,000,000 | | | Wright, Chris | Sent to Carrier | APS | Ordered (09/17/2013) | Follow-Up-09/18/2013 |
| | Wright, Chris | | 13,000,000 | | | Wright, Chris | Sent to Carrier | | | |
| | White, Thomas | | 2,100,000 | | | Wright, Chris | Quote Received | | | |
| | Tooley, Joseph H | | 1,000,000 | | | Wright, Chris | Quote Received | Paramedical Exam | Ordered (07/01/2013) | Follow-Up-07/03/2013 |
| | Hochberg, Steve | | 3,000,000 | | | Wright, Chris | Quote Received | | | |
| VF52567930 | Leavitt, Michael | | 2,000,000 | 100,255.00 | 153,400.00 | Wright, Chris | Submitted | | | |
| | Dasar, Bela | Pacific Life Insurance Company | 3,000,000 | | | Wright, Chris | Informal Application | Stress Perfusion Test 2012 recommended stress perfusion test | Outstanding (03/13/2013) Outstanding (03/13/2013) | Follow-Up-03/14/2013 Follow-Up-03/13/2013 |
| | Follove, Brian | | 1,850,000 | | | Wright, Chris | Quote Received | | | |
| | Hamling, Chuck | | 1,600,000 | | | Wright, Chris | Quote Received | APS | Other (05/27/2013) | Follow-Up-06/26/2013 |
| | Byron, Chris | | 2,000,000 | | | Wright, Chris | Quote Received | APS | Other (05/27/2013) | Follow-Up-06/28/2013 |
| 16307203 | Hochberg, Steve | | 3,000,000 | | | Wright, Chris | Approved | 1035 Proceeds | Ordered (03/04/2013) | Follow-Up-10/05/2013 |
| | Twefdowski, Parick | AXA Equitable | 2,000,000 | 7,800.00 | 33,054.00 | Wright, Chris | Quote Received | APS APS | Other (03/13/2013) Other (03/13/2013) | Follow-Up-03/14/2013 Follow-Up-03/14/2013 |
| | Johnston, Steven | | 750,000 | | | Wright, Chris | Quote Received | See notes for Mr... medical info needed | Pending (03/02/2013) | Follow-Up-03/05/2013 |
| | Sharma, Ashok | | 3,000,000 | | | Wright, Chris | | 7/12 check up with Dr. McKenzie (Aneurysm) APS | Pending (03/02/2013) | Follow-Up-03/05/2013 |
| | Nicholson, Pete | | 3,000,000 | | | Wright, Chris | Quote Received | APS | Ordered (09/11/2013) | Follow-Up-09/11/2013 |
| | Nixon, Todd | | 1,500,000 | | | Wright, Chris | Sent to Carrier | APS | Ordered (04/30/2013) | Follow-Up-05/01/2013 |

© 2006-2013 Ebix, Inc. All rights reserved.

| Policy # | Client/Owner | Carrier Name | Benefit | Premium | Target Appraisal | Segment | Status | All Open Requirements | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Keenan, William | | 25,000,000 | | | Wright, Chris | Informal Application | | | |
| | Jones, Meredith, III | | 1,500.00 | | | Wright, Chris | Quote Received | | | |
| | Zimmerman, Rick | | 5,000,000 | | | Wright, Chris | Quote Received | | | |
| | Holwez, Robert | | 1,000,000 | | | Wright, Chris | Quote Received | Paramedical Exam | Ordered (04/19/2013) | Follow-Up - 01/20/2013 |
| | Stephen, Christopher | | 1,500,000 | | | Wright, Chris | Quote Received | | | |
| | Brown, Keith | | 3,000,000 | | | Wright, Chris | Quote Received | Paramedical Exam Paramedical Exam | Other (04/23/2013) Other (04/23/2013) | Follow-Up - 04/24/2013 Follow-Up - 04/24/2013 |
| 5632201136 | Twardowski, Patrick | | 700.00 | | | Wright, Chris | Quote Received | | | |
| | Robens, Larry | AXA Equitable | 800.00 | 8,000.00 | 13,392.00 | Wright, Chris | Approved | | | |
| VR543599560 | Rothschild, Milton | Pacific Life Insurance Company | 2,000,000 | 55,176.00 | 104,980.00 | Wright, Chris | Approved | | | |
| | Lee, Paul | | 500.00 | | | Wright, Chris | Quote Received | Paramedical | Ordered (04/25/2013) | Follow-Up - 04/26/2013 |
| | Sharad, Singhy | | 2,000,000 | | | Wright, Chris | Quote Received | Paramedical Exam | Ordered (04/26/2013) | Follow-Up - 04/27/2013 |
| 5632070570 | Dufresne, Charles Barany | AXA Equitable | 2,000,000 | 19,250.00 | 37,540.00 | Wright, Chris | Delivered | | | |
| | Firth, John | | 3,000,000 | | | Wright, Chris | Quote Received | | | |
| 93562211 | Mitchel, Stephen | John Hancock | 484,107 | 7,400.00 | 18,696.40 | Wright, Chris | Issued | All UW Requirements In | | |
| 563200635 | Lambert, Scott | AXA Equitable | 1,000,000 | 6,000.00 | 20,370.00 | Wright, Chris | All UW Requirements In | | | |
| | Sharma, Ashok | | 2,000,000 | | | Wright, Chris | Sent to Center | | | |
| | Sharma, Anyama | | 2,000,000 | | | Wright, Chris | Quote Received | | | |
| | Bohrman, Terry | | 2,000,000 | | | Wright, Chris | Quote Received | APS | Other (05/09/2013) | Follow-Up - 05/10/2013 |
| | Baumler, Joseph | | 1,500,000 | | | Wright, Chris | Informal Application | Sept Auth for Doc Paramedical Exam APS | Ordered (05/14/2013) Ordered (05/09/2013) Ordered (05/09/2013) | Follow-Up - 05/15/2013 Follow-Up - 05/10/2013 Follow-Up - 05/10/2013 |
| | Noi, Jr, Richard | | 2,500,000 | | | Wright, Chris | Sent to Courier | | | |
| | Jackson, Eric | | 4,000,000 | | | Wright, Chris | Quote Received | | | |

© 2006-2013 Ebix, Inc. All rights reserved.

| Policy # | Insured Name | Carrier Name / Insurance Company | Benefit | Premium | Target Amount | Advisor | Status Approved | All Open Requirements / 1035 Proceeds | | Follow-Up |
|---|---|---|---|---|---|---|---|---|---|---|
| VPS26052050 | Defenderus, Suzanne | Pacific Life Insurance Company | 2,100,000 | 14,161.00 | 43,360.00 | Wright, Chris | All UW Requirements In | 1035 Proceeds | Ordered (05/03/2013) | Follow-Up - 10/04/2013 |
| 46022277 | Tipton, Tom | John Hancock | 1,500,000 | 14,350.00 | 25,385.00 | Wright, Chris | All UW Requirements In | | Ordered (05/03/2013) | Follow-Up - 10/04/2013 |
| | Schuler, Douglas A. | | 6,000,000 | | | Wright, Chris | Quote Received | | | |
| | Chapman, Larry | | 5,000,000 | | | Wright, Chris | Quote Received | APS<br>APS | Ordered (08/26/2013)<br>Ordered (08/26/2013) | Follow-Up - 08/27/2013<br>Follow-Up - 08/27/2013 |
| | Purdsell, John | | 1,500,000 | | | Wright, Chris | Quote Received | Paramedical Exam | Ordered (05/23/2013) | Follow-Up - 05/24/2013 |
| | Keelin, III, William | | 6,000,000 | | | Wright, Chris | Quote Received | APS | Other (05/23/2013) | Follow-Up - 05/24/2013 |
| | Warfield, Lisa | | 750,000 | | | Wright, Chris | Quote Received | APS<br>APS | Other (05/23/2013)<br>Other (05/23/2013) | Follow-Up - 05/24/2013<br>Follow-Up - 05/24/2013 |
| | Warfield, Derrick | | 750,000 | | | Wright, Chris | Quote Received | | | |
| | Morrissey, Dawn | | 3,000,000 | | | Wright, Chris | Informal Application | APS<br>Paramedical Exam | Other (03/29/2013)<br>Ordered (05/28/2013) | Follow-Up - 07/31/2013<br>Follow-Up - 05/29/2013 |
| | Chapman, Christine | | 1,000,000 | | | Wright, Chris | Quote Received | | | |
| 9117265022 | Waldman, Mark | ING | 1,500,000 | 27,600.00 | | Wright, Chris | Submitted | | | |
| | Rasmussen, Steve | | 1,200,000 | | | Wright, Chris | Quote Received | | | |
| 113313596 | Pflugge, Brian B | AXA Equitable | 1,000,000 | | | Wright, Chris | All UW Requirements In | | | |
| VPS25552790 | Lazzaroff, Michael | Pacific Life Insurance Company | 6,000,000 | 393,292.00 | 310,200.00 | Wright, Chris | Submitted | | | |
| 113160474 | Singh, Harinder | Hartford Life Insurance Company | 750,000 | 6,150.00 | 14,496.00 | Wright, Chris | Submitted | APS | Other (05/30/2013) | Follow-Up - 05/31/2013 |
| 905047163 | Mitchell, Stephen | John Hancock | 250,000 | 7,046.00 | 8,412.49 | Wright, Chris | Issued | | | |
| | Chavez, Paul | | 750,000 | | | Wright, Chris | Informal Application | | | |
| | Brown, Keith | | 1,000,000 | | | Wright, Chris | Sent to Carrier | | | |

© 2000-2013 Ebix, Inc. All rights reserved.

| Policy # | Contact Name | Carr Name | Benefit $ | Premium $ | Target Amount | Advisor | Status | All Open Requirements | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | Brown, Sonja | | 500,000 | | | Wright, Chris | Quote Received | | | |
| IWP1301555 | Spooner, Jack B | AXA Equitable | 1,723,000 | 11,500.00 | | Wright, Chris | Submitted | APS | Other (06/04/2013) | Follow-Up - 06/05/2013 |
| | Johnston, Bonnie | | 500,000 | | | Wright, Chris | Quote Received | | | |
| VP52177200 | Lomberg, Robert L. | Pacific Life Insurance Company | 250,000 | 6,000.00 | 11,343.00 | Wright, Chris | Approved | 1035 Proceeds | Ordered (06/25/2013) | Follow-Up - 07/23/2013 |
| | Ricci, Matthew | John Hancock Life Insurance Company (U.S.A.) | 376,439 | 2,500.00 | 7,122.04 | Wright, Chris | All UW Requirements In | | | |
| | Workhorger, Clark | | 3,000,000 | | | Wright, Chris | Sent to Carrier | BCS Paramed exam EKG (resting) MVR Fasting Blood Profile APS | | |
| VP53196840 | Groff, Ronald | Pacific Life Insurance Company | 1,899,908 | 11,833.00 | 50,465.00 | Wright, Chris | Approval | 1025 Proceeds | Ordered (08/29/2013) | Follow-Up - 09/03/2013 |
| I13313158 | Phegge, Jerrie | AXA Equitable | 1,000,000 | | | Wright, Chris | Submitted | | | |
| VP53160320 | Conley, Michael | Pacific Life Insurance Company | 2,500,000 | 25,000.00 | 59,875.00 | Wright, Chris | Approved | 1035 Proceeds | Ordered (09/10/2013) | Follow-Up - 10/15/2013 |
| | Stubblefield, Greg | | 20,000,000 | | | Wright, Chris | Informal Application | Paramedical Exam | Ordered (07/22/2013) | Follow-Up - 07/23/2013 |
| VP52580640 | Lomberg, Robert L. | Pacific Life Insurance Company | 250,000 | 6,000.00 | 11,343.00 | Wright, Chris | Issued | 1035 Proceeds | Ordered (07/22/2013) | Follow-Up - 07/23/2013 |
| VP52597170 | Ivey, Malcolm F | Pacific Life Insurance Company | 1,620,345 | 23,460.00 | 63,556.00 | Wright, Chris | Submitted | APS | Ordered (09/04/2013) | Follow-Up - 09/05/2013 |
| VP52159990 | Wright, Jennifer | Pacific Life Insurance Company | 750,000 | 1,600.00 | 17,010.00 | Issued | | 1035 Proceeds APS | Ordered (06/26/2013) Other (06/26/2013) | Follow-Up - 06/26/2013 Follow-Up - 06/26/2013 |

© 2000-2013 Ebix, Inc. All rights reserved.

© 2000-2013 Ebix, Inc. All rights reserved.

| Policy # | Client Name | Carrier Name | Benefit | Premium | Target Approval | Advisor | Status | ALT Open Requirement Sleep Study @ St. Lukes Hosp w/ Dr. Ehrenstein | Ordered | Follow-Up |
|---|---|---|---|---|---|---|---|---|---|---|
| VFS26971N0 | Saborski, III | Pacific Life Insurance Company | 750,000 | 3,000.00 | 14,250.00 | Wright, Chris | Submitted | | Ordered (09/05/2013) | Follow-Up - 08/25/2013 |
| | Greenberg, Todd | Pacific Life Insurance Company | 3,000,000 | | | Wright, Chris | Sent to Carrier | | | |
| | Greenberg, Todd | | 6,000,000 | | | Wright, Chris | Quote Received | | | |
| VFS26113070 | Proctor, Linda | Pacific Life Insurance Company | 250,000 | 2,800.00 | 5,000.00 | Wright, Chris | Approved | | | |
| | Scott, Shane D | | 1,500,000 | | | Wright, Chris | Informal Application | APS | Ordered (09/07/2013) | Follow-Up - 08/08/2013 |
| VFS2613210 | Proctor, Mark | Pacific Life Insurance Company | 250,000 | 5,531.00 | 6,300.00 | Wright, Chris | Approved | | | |
| VFS26027270 | McGovern, Brian | Pacific Life Insurance Company | 2,500,000 | 18,000.00 | 63,753.00 | Wright, Chris | Submitted | | | |
| 911728510 | Eliason, Stephen | ING | 2,650,000 | 20,759.00 | 54,113.00 | Wright, Chris | Submitted | | | |
| | Creswell, III, Milton | | 2,000,000 | | | Wright, Chris | Informal Application | Paramedical Exam APS | Ordered (09/15/2013) Ordered (09/13/2013) | Follow-Up - 08/14/2013 Follow-Up - 08/14/2013 |
| | Patel, Christopher | | 2,700,000 | | | Wright, Chris | Sent to Carrier | Paramedical Exam APS | Ordered (09/05/2013) | Follow-Up - 08/27/2013 |
| | Gabriele, Cosmelo | | 3,000,000 | | | Wright, Chris | Informal Application | APS Paramedical Exam | Ordered (09/26/2013) Ordered (09/06/2013) | Follow-Up - 08/27/2013 Follow-Up - 08/27/2013 |
| | Layton, Bradford | | 5,000,000 | | | | Sent to Carrier | | | |
| | Layton, Bradford | | 1,000,000 | | | | Sent to Carrier | | | |
| | Chrispin, Jeff | | 2,500,000 | | | | Sent to Carrier | | | |
| VFS26074420 | Leenberg, Robert L | Pacific Life Insurance Company | 1,000,000 | 350.00 | 45,570.00 | | Approved | 1035 Proceeds | Ordered (09/10/2013) | Follow-Up - 10/15/2013 |
| | Bingaman, Scott | | 1,000,000 | | | Wright, Chris | Informal Application | Paramedical Exam APS APS | Ordered (09/05/2013) Other (09/05/2013) Ordered (09/05/2013) | Follow-Up - 09/06/2013 Follow-Up - 09/06/2013 Follow-Up - 09/06/2013 |

| Contact Name | Career Name | Treated | Provena | Target Amount | Advisor | Type | All Ops In (reviewed) | | |
|---|---|---|---|---|---|---|---|---|---|
| Wright, Dwayne Scott | | 102,000 | | | Wright, Chris | Informal Application | Paramedical Exam | Ordered (09/06/2013) | Follow-Up - 09/12/2013 |
| | | | | | | | APS | Ordered (09/07/2013) | Follow-Up - 09/07/2013 |
| Preston, Linda | | 1,000,000 | | | Wright, Chris | Sent to Carrier | | | |
| Preston, Mark | | 1,000,000 | | | Wright, Chris | Sent to Carrier | | | |
| Baise, Daniel | | 1,000,000 | | | Wright, Chris | Informal Application | APS | Ordered (09/14/2013) | Follow-Up - 09/17/2013 |

(6)

© 2008-2013 Ebix, Inc. All rights reserved.

# Closed Cases as of 9/20/13

| Client Name | Policy # | Carrier | Target Premium | Date Closed |
|---|---|---|---|---|
| Thomas Wright | VF52512140 | Pac | $ 56,975.00 | 6/3/2013 |
| William Wright | VF52501880 | Pac | $ 78,870.00 | 6/4/2013 |
| Walter Lamkin | VF52541890 | Pac | $ 45,370.00 | 6/11/2013 |
| Charles Kramer | VF52539700 | Pac | $ 13,891.00 | 6/12/2013 |
| Susan Moriconi | VF52539050 | Pac | $ 96,957.00 | 6/12/2013 |
| William Moriconi | VF52535230 | Pac | $ 45,510.00 | 6/25/2013 |
| David Bentzinger | 563204868 | AXA | $ 15,194.25 | 7/1/2013 |
| Bill Beaman | VF52546370 | Pac | $ 25,095.00 | 7/8/2013 |
| William Shearburn | VF52566370 | Pac | $ 69,669.00 | 7/10/2013 |
| Robert Feldman | VF52547670 | Pac | $ 45,225.00 | 7/22/2013 |
| Michael Maschmeyer | 563203273 | AXA | $ 42,060.00 | 8/5/2013 |
| Samir Ruvinov | 563205968 | AXA | $ 14,810.00 | 8/7/2013 |
| Jim Eiseman | 563203357 | AXA | $ 50,260.00 | 8/7/2013 |
| Joseph Jindela | 563205922 | AXA | $ 27,547.50 | 8/19/2013 |
| Henry Paul | VF52586880 | Pac | $ 56,464.00 | 8/23/2013 |
| Doug Bruce | 563206079 | AXA | $ 63,158.00 | 8/27/2013 |
| Robert Feldman | VF52539650 | Pac | $ 117,585.00 | 8/28/2013 |
| Michael Nogalski | 563207412 | AXA | $ 25,694.00 | 9/10/2013 |
| Charles DePenaloza | 563207670 | AXA | $ 37,540.00 | 9/11/2013 |
| Robert Lamberg | VF52580640 | Pac | $ 11,343.00 | 9/13/2013 |
| Robert Lamberg | VF52607420 | Pac | $ 45,370.00 | 9/18/2013 |
| Jennifer Wright | VF52138990 | Pac | $ 17,010.00 | 9/18/2013 |
| Charles DePenaloza | 563207670 | AXA | $ 37,540.00 | 9/20/2013 |

| Total | | | $ 1,039,137.75 | |